## IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

### (Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Newark, NJ 07101)

| | | |
|---|---|---|
| Ronald Satish Emrit, | ) | |
|     Plaintiff (Pro Se) | ) | |
| | ) | C.A. No.:_____ |
| | ) | |
| v. | ) | |
| | ) | |
| Disc Makers, Inc., | ) | |
|     And CD Baby, Inc. | ) | |
|     Defendants | ) | |
| | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*

## COMPLAINT

COMES NOW, the plaintiff Ronald Satish Emrit, who is bringing forth this cause of action against both defendants seeking judgment in the amount of $80,000 (eighty-thousand dollars) assessing joint and several liability for which both of the defendants are expected to file cross-claims amounting to contribution and indemnity.  In bringing forth this cause of action, the plaintiff states, avers, and alleges the following:

### I.) NATURE OF THE CASE

1.) The plaintiff is suing the defendants for the following tortious acts: negligence, intentional infliction of emotional distress (IIED), conversion, strict products liability, breach of implied warranty of merchantability, breach

of an implied warranty of fitness for a particular purpose, and the tortious interference with business relations/contracts.

2.) The plaintiff is suing the defendants for a material breach of contract.

## II.) PARTIES TO THIS LITIGATION

3.) The plaintiff is an indigent, disabled, and unemployed musician/recording artist. His name is Ronald Satish Emrit and his address is 4529 Townwall Street, Las Vegas, NV 89115. His cellphone number is (301)537-8471. His email address is einsteinrockstar@hotmail.com.

4.) The first defendant is "doing business as" (d/b/a) CD Baby and has its nerve center and/or principal place of business (ppb) at the following address: 13909 NE Airport Way, Portland, OR 97230. The toll free number for the first defendant is 1-800-289-6923.

5.) The second defendant is "doing business as" (d/b/a) Disc Makers and has its nerve center and/or principal place of business (ppb) located at the following address: 7905 N Crescent Blvd, Pennsauken Township, NJ 08110. The toll free number listed for the second defendant is (800) 468-9353.

## III.) JURISDICTION AND VENUE

6.) Pursuant to 18 U.S. Code § 2334, the U.S. District Court of New Jersey has jurisdiction because of the fact that the second defendant has its nerve center and/or principal place of business (ppb) in New Jersey and the amount in controversy exceeds $75,000.

7.) Furthermore, there is complete diversity of jurisdiction between the plaintiff and the two defendants which gives this court personal, subject matter, original, and exclusive jurisdiction.

8.) Venue in this case is also proper pursuant to 28 U.S. Code § 1408

## IV. STATEMENT OF FACTS

9.) Since 2007, the plaintiff has had his music distributed through CD Baby and particularly for his debut album "Unleash the Beast."

10.) On July 29, 2016, the plaintiff had been informed by Cole, i.e. a customer service representative with CD Baby, that his CD's were no longer going to be mailed out due to various complaints by libraries in the Las Vegas metropolitan area.

11.) CD Baby take a full week to inform the plaintiff that his orders for CD's would not be fulfilled.

12.) Furthermore, the plaintiff alleges that the second defendant failed to properly mix and master his song "Stunts, Blunts, and Deep Pocket" which has a "skip" in it it indicating that there was defective mastering by CD Baby.

13.) The plaintiff's debut album "Unleash the Beast" was published in 2007 by Parris Foster of Tuff-Stuff Recording, Inc. with its nerve center and/or principal place of business (ppb) in Baltimore, MD.

14.) Accordingly, the plaintiff's debut album "Unleash the Beast" was mastered at Nowchild Studio in Baltimore, MD, and the majority of songs were produced, arranged, and mixed by Stanley Frank of Ten Karat Gold Productions, Inc. (TKG) of Owings Mills, MD.

15.) Track # 11 of the plaintiff's debut album "Unleash the Beast" is entitled "Brenda (Having My Baby)" and was produced and engineered by Vince Coates of Pulse Music Productions, Inc. based in San Diego, CA.

16.) Track # 12 of the plaintiff's debut album "Unleash the Beast" is entitled "La Reina Cubana" (e.g. a reggaeton song recorded in Spanish) and was produced and engineered by Patrick Hightower of Street Star Studios in Haymarket, VA.

17.) The music videos for the songs on this album were recorded by Paul Gillingwater, Matthew Brooks (e.g. the plaintiff's cousin), and Tee Platinum of Platinum Plus Productions, Inc. based in Atlanta, GA.

18.) More specifically, Paul Gillingwater was the videographer for the music video "La Reina Cubana" which was edited by Luis Ruiz of New York, NY and filmed at the Gansevoort Hotel in the meat-packing district New York, NY; Tee Platinum was the videographer for the music videos for "Lookin' for My Dimepiece" and "Brenda (Having My Baby)" while Matthew Brooks was the videographer for the song entitled "I Need You Baby."

## V.) COUNT ONE: NEGLIGENCE

19.) Five elements are required to establish a prima facie case of negligence:  the existence of a legal duty to exercise reasonable care; a failure to exercise reasonable care; cause in fact of physical harm by the negligent conduct; physical harm in the form of actual damages; and proximate cause, a showing that the harm is within the scope of liability.

20.) The plaintiff argues that both of the defendants have committed negligence by placing his debut album "Unleash the Beast" up for sale when Disc Makers, in particular, defectively mastered and manufactured the CD which is evident from there being a "skip" on the CD as Track # 9 is played: Track # 9 is called "Stunts, Blunts, and Deep Pocket."

## VI.) COUNT TWO: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS/CONTRACTS

21.) A plaintiff must establish five elements in order to prevail in a tortious interference with contract claim. The plaintiff must establish:

a.) the existence of a contract,

4

b.) the alleged wrongdoer's knowledge of the contract,

c.) intentional procurement of its breach,

d.) without justification, and

e.) damages. ***Kallok v. Medtronic, Inc., 573 N.W.2d , 356, 362. (Minn. 1998)***.

22.) The plaintiff argues that both of the defendants committed the tortious interference with business relations/contracts by failing to process ten orders placed by the plaintiff which were supposed to have resulted in 20 CD's being mailed to various banks and libraries in the Las Vegas Metropolitan area.

## VII.) COUNT THREE: MATERIAL BREACH OF CONTRACT

23.) To establish a breach of contract, the non-breaching party generally must prove three things: (a.) the existence of an enforceable contract; (b.) that the party seeking to enforce the contract has performed its obligations (i.e. is not in breach itself); and (c.) that the breach was material. Having the terms of the agreement written down is the first step towards proving the existence of an enforceable contract. However, it is not the only step.

24.) The plaintiff argues that the first defendant committed a material breach of contract by failing to process ten orders placed by the plaintiff which were supposed to have resulted in 20 CD's (of the plaintiff's debut album "Unleash the Beast") being mailed to various libraries and banks in the Las Vegas metropolitan area.

## VIII.) COUNT FOUR: PRODUCTS LIABILITY

25.) In order to establish a prima facie case for strict products liability, the following elements must be proved:

a.) Defendant must be a merchant, seller, manufacturer, etc.

b.) The product must have either a manufacturing or design defect:

Manufacturing defect: the product is an anomaly, and the difference between the product in hand and all others is exactly the difference that made the product dangerous.

Design defect: A problem common to each unit that the seller could have eliminated through a cost effective way to make the product safe w/o sacrificing utility.

c.) The defect existed when if left the seller's hands. *If the defect occurred during the ordinary channels of commerce, there is a presumption that the defect existed when it left the seller's hands.

d.) The plaintiff made a foreseeable use of the product (proximate cause thing)

26.) The plaintiff argues that both defendants should be held strictly liable for the design defect which occurred when both of the defendants placed the plaintiff's album "Unleash the Beast" in the international stream of commerce (through ordinary channels of distribution) with a "skip" on Track # 9, i.e. a song entitled "Stunts, Blunts, and Deep Pocket" which is registered with the Library of Congress, ASCAP, BMI, and Sound Exchange.

## IX.) COUNT FIVE: BREACH OF WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

27.) The implied warranty of fitness for a particular purpose imposes a similar requirement in cases in which the seller knows or has reason to know of a particular purpose for which the goods are required and in which the buyer is relying on the seller to select or furnish suitable goods. The seller then warrants that thegoods are fit for that particular purpose (U.C.C. § 2-315).

28.) Implied warranties are those created and imposed by law, and accompany the transfer of title to goods unless expressly and clearly limited or excluded by the contract.

29.) However, with respect to damages for personal injury, the UCC states that any such contractual limitations or exclusions are "prima facie unconscionable" and cannot be enforced (U.C.C. § 2-719 (3))

30.) The plaintiff argues that the second defendant, in particular, committed a breach of the implied warranty of fitness for a particular purpose by placing an item in the stream of international commerce which is defective due to the fact that track # 9 off of the plaintiff's debut album (e.g. "Unleash the Beast") skips.

31.) Track # 9 on the album "Unleash the Beast" is entitled to "Stunts, Blunts, and Deep Pocket."

32.) The particular purpose of the plaintiff's having a CD manufactured and distributed by the two defendants is to have the general public appreciate the plaintiff's music in the genres of hip hop/rap and reggaeton.

33.) Furthermore, the particular purpose of the plaintiff is to generate record sales and to have his album declared as gold, platinum, and/or diamond by the Recording Industry Association of America (RIAA).

34.) The plaintiff can not go gold, platinum, or diamond and the plaintiff can not increase his record sales if his debut album has not been properly manufactured and distributed due to a "skip" being evident on the song "Stunts, Blunts, and Deep Pocket."

## X.) COUNT SIX: BREACH OF WARRANTY OF MERCHANTABILITY

35.) The implied warranty of merchantability requires that the product and its container meet certain minimum standards of quality, chiefly that the product be fit

for the ordinary purposes for which such goods are sold (U.C.C. § 2-314). This requirement includes a standard of reasonable safety.

36.) Implied warranties are those created and imposed by law, and accompany the transfer of title to goods unless expressly and clearly limited or excluded by the contract.

37.) However, with respect to damages for personal injury, the UCC states that any such contractual limitations or exclusions are "prima facie unconscionable" and cannot be enforced (U.C.C. § 2-719 (3))

38.) The plaintiff argues that the second defendant, in particular, committed a breach of the implied warranty of merchantability by placing an item in the stream of international commerce which is defective due to the fact that track # 9 on the plaintiff's debut album (e.g. "Unleash the Beast") skips.

39.) Track # 9 on the album "Unleash the Beast" is entitled to "Stunts, Blunts, and Deep Pocket."

## XI.) COUNT SEVEN: CONVERSION

40.) In order to establish a prima facie case for conversion, the following elements must be proved:

a.) An act by defendant that interferes with plaintiff's right of possession in a chattel,
b.) The interference is so serious that it warrants requiring defendant to pay the   chattel's full value,

c.) Intent and,

d.) Causation.

41.) The plaintiff argues that both of the defendants have committed conversion by accepting the plaintiff's money and failing to process the ten orders which laid in "limbo" for a week and which were supposed to have resulted in the plaintiff's album "Unleash the Beast" being sent to various libraries and banks in the Las Vegas/Henderson, NV metropolitan area.

## XII.) COUNT EIGHT: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

42.) To establish a prima facie case for the intentional infliction of emotional distress (IIED), the following elements must be proved:

- a.) An act by defendant amounting to extreme and outrageous conduct,
- b.) Intent or recklessness,
- c.) Causation and,
- d.) Damages -severe emotional distress.

43.) The plaintiff argues that both of the defendants have committed the intentional infliction of emotional distress (IIED) because it is extreme, outrageous, and egregious for the defendants to have mastered, manufactured, and distributed a debut album "Unleash the Beast" with a defective song that "skips" that is entitled "Stunts, Blunts, and Deep Pocket" and which is registered as an "original work of authorship" with the Library of Congress and also with ASCAP and BMI.

44.) ASCAP is the Performing Rights Organization (PRO) that collects performance and mechanical royalties for the plaintiff while BMI is the performing rights organization (PRO) that collects mechanical and performance royalties for Ten Karat Gold Productions, Inc. (TKG), i.e. the plaintiff's record label/production company which released his debut album "Unleash the Beast" and which also has an account established with Disc Makers and CD Baby in addition to the independent agent and repertoire (A&R) "doing business as" (d/b/a) TAXI, Inc. with its nerve center and/or principal place of business (ppb) located in Calabasas, CA.

9

45.) Moreover, the plaintiff argues that it was extreme, outrageous, and egregious for the first defendant to have failed to process the plaintiff's last ten orders due to the fact that the warehouse employees at CD Baby claimed that they were getting complaints from libraries in the Las Vegas/Henderson, NV metropolitan area who were receiving CD's that they did not order but were sent by the plaintiff to these locations simply to market and promote his music.

46.) The last ten orders placed by the plaintiff were supposed to have resulted in 20 debut album CD's being sent to various banks and libraries in the Las Vegas/Henderson, NV metropolitan area.

## VIII.) PRAYER FOR RELIEF

WHEREFORE, the plaintiff has brought forth this cause of action against both defendants seeking to assess joint and several liability.  The plaintiff is seeking damages in the amount of $80,000 (eighty thousand dollars) for the commission of the following tortious acts by both defendants: negligence, intentional infliction of emotional distress (IIED), conversion, strict products liability, breach of implied warranty of merchantability, breach of an implied warranty of fitness for a particular purpose, and the tortious interference with business relations/contracts.  Both defendants have also committed a material breach of contract.  In bringing forth this "prayer for relief," the plaintiff states, avers, and alleges the following:

A.) This judgment amount of $80,000 would be characterized as the punitive, compensatory, treble, actual, and special damages that the plaintiff is entitled to as a result of the defendants' having committed the aforementioned tortious acts.

B.) This judgment amount of $80,000 would also be characterized as expectation, reliance, restitution, incidental, and consequential damages as a result of both of the defendants' having committed a material breach of contract.

C.) Liquidated damages may also be applicable given that the plaintiff and the two defendants have been in "privity of contract."

D.) A discussion of quantum meruit and unjust enrichment may also be applicable to the circumstances of this case. None of the contracts are presumed to have been drafted as "caveat emptor" or "buyer beware."

E.) The plaintiff is also seeking the equitable remedy of specific performance and/or an injunction mandating that the defendants continue to manufacture, distribute, and mail out the plaintiff's CD's according to his specifications when her orders them online at http://www.cdbaby.com.

Respectfully submitted,

Ronald Satish Emrit
President and CEO
Alex Garcia Enterprises, Inc. (AGE)
4529 Townwall Street
Las Vegas, NV 89115
(301)537-8471
einsteinrockstar@hotmail.com
einsteinrockstar2@outlook.com